UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CR 00-29ML |
| | : | |
| WESLEY McCLINTON | : | |

# REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) and 18 U.S.C. § 3401(i) for proposed findings of fact concerning whether Defendant is in violation of the terms of his supervised release and, if so, to recommend a disposition of this matter. In compliance with that directive and in accordance with 18 U.S.C. § 3583(e) and Fed. R. Crim. P. 32.1, preliminary hearings were held on February 3 and 7, 2006 and a subsequent revocation hearing on February 14, 2006, at which time Defendant, through counsel and personally, admitted that he was in violation of his supervised release conditions as to the charged violations. At both the February 7 and 14, 2006 hearings, I ordered Defendant detained pending my Report and Recommendation and final sentencing before District Judge Lisi. Based upon the following analysis and the admission of Defendant, **I recommend that Defendant be committed to the Bureau of Prisons for a term of four (4) months of incarceration followed by a term of supervised release for a period of thirty-two (32) months, during which time he shall participate in either an inpatient or outpatient substance abuse treatment program as directed by the Probation Department, and Defendant shall provide up to seventy-two (72) drug tests each year as directed by the Probation**

**Department. I further recommend that, while on supervised release, Defendant participate in a mental health treatment program as approved by the Probation Department. I further recommend that, while on supervised release, Defendant be employed full-time and complete ten hours of community service for each week he is unemployed.**

**Background**

On January 20, 2006, the Probation Office petitioned the Court for the issuance of a Warrant for the Defendant's arrest. On January 23, 2006, the District Court reviewed the request and ordered the issuance of an arrest warrant. Defendant self-surrendered and appeared in Court for preliminary hearings on both February 3, 2006 and February 7, 2006. Defendant was detained after the February 7, 2006 hearing. On February 14, 2006, Defendant knowingly and voluntarily admitted to the following charges and waived his right to a revocation hearing under Fed. R. Crim. P. 32.1(b)(2):

> **The defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month.**
>
> Mr. McClinton failed to submit his April 2005, May 2005, June 2005, July 2005, August 2005, September 2005, October 2005, November 2005 and December 2005, monthly supervision reports in a timely fashion as directed by USPO Borrelli on April 8, 2005.
>
> **The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.**
>
> Mr. McClinton has failed to report to the U.S. Probation Department on December 5, 2005 as directed by USPO Borrelli on December 2, 2005.

**The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.**

Mr. McClinton failed to report to the U.S. Probation Department on December 8, 2005 as directed by USPO Borrelli on December 5, 2005, December 6, 2005, and December 7, 2005.

**The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.**

Mr. McClinton has failed to contact the voice mail of USPO Borrelli on January 5, 6, 7, 8, 9, 10, 11, 13, 14, 15, 16, 17 and 18, 2006 as directed by USPO Borrelli on January 4, 2006.

**The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.**

Mr. McClinton failed to provide a copy of his work schedule immediately as directed by USPO Borrelli on January 6, 2006.

**The defendant shall participate in an outpatient program approved by the Probation Office for substance abuse, which program may include testing to determine whether the defendant has reverted to the use of drugs or alcohol.**

On November 30, 2005, Mr. McClinton was discharged from Fresh Start Recovery Coalition, Inc., a residential sober house, after he failed to comply with program rules and regulations.

**The defendant shall notify the probation officer at least ten days prior to any change in residence or employment.**

Mr. McClinton failed to notify USPO Borrelli that he moved from 214 Commercial Street, Suite 104, Malden, Massachusetts to 160 Washington Street, Malden, Massachusetts until December 2, 2005.

As Defendant has admitted these charges, I find he is in violation of the terms and conditions of his supervised release.

**Recommended Disposition**

Title 18 U.S.C. § 3583(e)(2) provides that if the Court finds defendant violated a condition of supervised release, the court may extend the term of supervised release if less than the maximum authorized term was previously imposed. In this case, the maximum term of supervised release is life.

Section 3583(e)(3), 18 U.S.C., provides that the Court may revoke a term of supervised release and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term or supervised release without credit for time previously served on post release supervision, if the Court finds by a preponderance of evidence that the defendant has violated a condition of supervised release, except that a defendant whose term is revoked under this paragraph may not be sentenced to a term beyond 5 years if the instant offense was a Class A felony, 3 years for a Class B felony, 2 years for a Class C or D felony, or 1 year for a Class E felony or a misdemeanor. If a term of imprisonment was imposed as a result of a previous supervised release revocation, that term of imprisonment must be subtracted from the above stated maximums to arrive at the current remaining statutory maximum sentence.

In this case, Defendant was on supervision for both Class B and C felonies. Therefore, he may not be required to serve more than three years' imprisonment upon revocation for the Class B felony and two years for the Class C felony. However, since this Defendant has already served twenty days' imprisonment as a result of one or more previous revocations, the statutory maximum term of imprisonment remaining is thirty-five months and ten days.

Section 3583(h), 18 U.S.C., and § 7B1.3(g)(2) of the United States Sentencing Guidelines ("USSG"), provide that when a term of supervised release is revoked and the defendant is required to serve a term of imprisonment that is less than the maximum term of imprisonment authorized, the Court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release. In this case, the authorized statutory maximum term of supervised release is life.

Section 7B1.1 provides for three grades of violations (A, B, and C). Subsection (b) states that where there is more than one violation, or the violation includes more than one offense, the grade of violation is determined by the violation having the most serious grade.

Section 7B1.1(a) notes that a Grade A violation constitutes conduct which is punishable by a term of imprisonment exceeding one year that (i) is a crime of violence, (ii) is a controlled substance offense, or (iii) involves possession of a firearm or destructive device; or any other offense punishable by a term of imprisonment exceeding twenty years. Grade B violations are conduct constituting any other offense punishable by a term of imprisonment exceeding one year. Grade C violations are conduct constituting an offense punishable by a term of imprisonment of one year or less; or a violation of any other condition of supervision.

Section 7B1.3(a)(1) states that upon a finding of a Grade A or B violation, the Court shall revoke supervision. Subsection (a)(2) provides that upon a finding of a Grade C violation, the court may revoke, extend or modify the conditions of supervised release. In this case, Defendant

committed Grade C violations. Therefore, the Court may revoke, extend or modify the conditions of supervision.

Section 7B1.3(c)(1) provides that where the minimum term of imprisonment determined under § 7B1.4 is at least one month, but not more than six months, the minimum term may be satisfied by (A) a sentence of imprisonment; or (B) a sentence that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in § 5C1.1(e) for any portion of the minimum term. Should the Court find that the defendant has committed a Grade B or C violation, § 7B1.3(c)(2) states that where the minimum term of imprisonment determined under § 7B1.4 is more than six months but not more than ten months, the minimum term may be satisfied by (A) a sentence of imprisonment; or (B) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in §5C1.1(e), provided that at least one-half of the minimum term is satisfied by imprisonment. The first provision which allows for alternatives for any portion of the minimum term applies to this matter.

Section 7B1.4(a) provides that the criminal history category is the category applicable at the time the defendant originally was sentenced to a term of supervision. In this instance, Defendant had a Criminal History Category of I at the time of sentencing. Should the Court revoke supervised release, the Revocation Table provided for in § 7B1.4(a) provides the applicable imprisonment range. In this case, Defendant committed Grade C violations and has a Criminal History Category of I. Therefore, the applicable range of imprisonment for this violation is three to nine months.

Section 7B1.5(b) provides that, upon revocation of supervised release, no credit shall be given toward any term of imprisonment ordered, for time previously served on post-release supervision.

**Offender's Characteristics**

Defendant was convicted of three counts of cocaine distribution and was sentenced on July 26, 2000 to forty-six months' incarceration and three years' supervised release. This is Defendant's second violation case. Defendant's initial period of supervised release commenced on November 26, 2002 with an expiration date of November 25, 2005. Although it appears that Defendant's first several months of his initial period of supervised release were fairly uneventful, his compliance record at the tail end was fairly dismal. Defendant failed to comply with even the most basic conditions of his supervised release such as seeking advance permission to travel outside the District. He has also failed to seek and maintain employment, and to provide financial support for his children. Defendant ultimately admitted the first set of violations and, on March 9, 2005, this Court recommended a sentence of three months' incarceration to be followed by a new period of supervised release of thirty-three months with special conditions. Although Defendant's counsel argued at that time for an alternative to incarceration, this Court concluded that if it did "not recommend incarceration, Defendant will suffer no consequence for his noncompliance and will have no incentive to improve his compliance in the future." March 9, 2005 Report and Recommendation at p. 9.

Defendant appeared for final sentencing before Judge Lisi on March 31, 2005. She was more receptive to Defendant's argument for alternative sentencing, and he was essentially sentenced to

time served (twenty days) and community confinement. Judge Lisi strongly recommended that Defendant be placed at the ACI work release program. For reasons unknown to this Court, Defendant was ultimately placed at Coolidge House in Boston and not the ACI's work release program. Defendant completed his time at the Coolidge House on October 12, 2005.

Unfortunately, Defendant's transition after leaving the Coolidge House has not been successful. He was discharged from a residential sober house on November 30, 2005 for chronically missing treatment meetings and violating curfew. Defendant did not take the initiative to notify his Probation Officer of this fact or the location of his new residence. Although Defendant did, on a positive note, secure a good position as a manager with a shoe store, he failed to give his Probation Officer a copy of his work schedule as requested and did not notify his Probation Officer when he was recently fired from that job. Finally, Defendant has essentially cut off contact with his Probation Officer since December 2005. He failed to report to scheduled meetings and to call in as instructed. At the February 14, 2006 hearing, Defendant's Probation Officer had no knowledge as to where Defendant had actually been living for the past several weeks.

Defendant has admitted to Grade C violations and the guideline range is three to nine months of incarceration. The Government requested a sentence of five months followed by further supervised release. Defendant did not make a specific recommendation as to the length of sentence but argued that any sentence should be a "split sentence" with the latter half served in community confinement. Given the history of this case, a split sentence does not make sense to this Court. Defendant just recently finished a period of community confinement and almost immediately reverted to violating the basic conditions of supervision. It does not appear that Defendant's first

violation case got his attention in any way as to the importance of strictly following his supervised release conditions.

Since Defendant admitted to the violations and has shown some positive signs such as obtaining employment and abstaining from drug use, this Court does not feel that a lengthy term of incarceration would be productive. However, some incarceration appears necessary to get the message to this Defendant that noncompliance has consequences. The sentence imposed for his first violation apparently was not effective in doing so. Thus, this Court recommends a sentence of four months' incarceration to be followed by thirty-two months of additional supervised release with specified conditions.

**Conclusion**

After considering the various factors set forth in 18 U.S.C. § 3553(a), **I recommend that Defendant be committed to the Bureau of Prisons for a term of four (4) months of incarceration followed by a term of supervised release for a period of thirty-two (32) months, during which time he shall participate in either an inpatient or outpatient substance abuse treatment program as directed by the Probation Department, and Defendant shall provide up to seventy-two (72) drug tests each year as directed by the Probation Department. I further recommend that, while on supervised release, Defendant participate in a mental health treatment program as approved by the Probation Department. I further recommend that, while on supervised release, Defendant remain employed full-time and complete ten hours of community service for each week he is unemployed.**

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt. L.R. Cv 72(d), Local Rules of Court; Fed. R. Civ. P. 72(b). Failure to file specific objections in a timely manner constitutes a waiver of the right to review by the District Court and the right to appeal the District Court's Decision. United States v. Valencia-Copete, 792 F.2d 4 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

LINCOLN D. ALMOND
United States Magistrate Judge
February 16, 2006